UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DONG HUANG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:22-cv-6 (PTG/TCB) |
| | ) |
| JOHN DOE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

THIS MATTER is before the undersigned on Plaintiff Dong Huang's ("Plaintiff") Second Motion for Default Judgment or, in the Alternative, for Leave to File an[] Amended Complaint. (Dkt. 13.)[1] For the reasons articulated below, the undersigned U.S. Magistrate Judge recommends that the Court grant Plaintiff's second motion for default judgment.

I. BACKGROUND

**A.    Procedural Posture**

Plaintiff filed this lawsuit seeking, among other things, the transfer of Defendant Domain Name to his possession after an unknown person transferred control of the domain name away from Plaintiff without his authorization. (*See generally* Dkt. 1.) Plaintiff filed his Verified Complaint on January 5, 2022, alleging (1) an *in rem claim* under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), (2) a claim under the Computer Fraud and Abuse Act, (3) a

---

[1] The relevant filings before the undersigned include Plaintiff's Complaint ("Compl.") (Dkt. 1); and Plaintiff's Second Motion for Entry of Default Judgment, or in the Alternative, for Leave to File an[] Amended Complaint (Dkt. 13) and all accompanying attachments and exhibits.

1

claim for declaratory judgment, (4) a violation of the Electronic Communications Privacy Act, (5) a claim for tortious interference with contractual relationship, (6) a claim for conversion, and (7) an action to quiet title. (Compl. ¶ 6-11.)   The Court granted Plaintiff's Motion for Service by Publication on January 6, 2022. (Dkt. 5.) When a representative for Defendant Domain Name <330.com> ("Defendant Domain Name") failed to appear or otherwise respond in this matter, Plaintiff requested the clerk's entry of default on January 31, 2022, which the Clerk entered on February 1, 2022. (Dkts. 6, 7.) That same day, Plaintiff filed his first motion for default judgment and accompanying memorandum in support. (Dkts. 8, 9.)

A representative party for Defendant Domain Name failed to appear at the Friday, February 18, 2022 hearing, and the undersigned took the matter under advisement to issue this Report and Recommendation. (Dkts. 10, 11.) The undersigned recommended that the Court deny Plaintiff's motion for default judgment as to Count I on March 10, 2022. Plaintiff filed the instant second motion for default judgment as to Counts II-VII on March 15, 2022. (Dkt. 13.) At the April 29, 2022 hearing for the second motion, no representative party for Defendant Domain Name appeared, and the undersigned took the matter under advisement to issue this Report and Recommendation. (Dkt. 18.)

  **B.**  **Jurisdiction and Venue**

Before the Court can render default judgment against an Internet domain name pursuant to the ACPA, it must have (1) subject-matter jurisdiction, (2) *in personam* or *in rem* jurisdiction, and (3) proper venue.

*First*, this Court has subject-matter jurisdiction. Federal district courts have original jurisdiction over all "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff brought claims pursuant to the CFAA (Count IV), which is a

federal statute. This Court therefore has federal question subject-matter jurisdiction over Count IV pursuant to 28 U.S.C. § 1331.

***Second***, the undersigned finds that the Court has proper personal jurisdiction over Defendant Doe and Defendant Domain Name. For a federal court to have personal jurisdiction over a party, both the standards of due process under the Fourteenth Amendment and the forum state's long-arm statute must be satisfied. *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). Federal due process permits personal jurisdiction over an out-of-state defendant if the party has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Virginia's long-arm statute, Virginia Code section 8.01-328.1, provides for personal jurisdiction to the extent that federal due process allows. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002) (internal citation omitted) ("Virginia has a long-arm statute that extends the jurisdiction of its courts as far as federal due process permits."). With federal due process and Virginia's long-arm statute essentially requiring the same standard, the Court need only undertake one inquiry. *See id.* Further, for out-of-state defendants, the Court must have specific personal jurisdiction, which arises when the party's contacts with the state give rise to the basis for the lawsuit. *Tire Eng'g & Distribution*, 682 F.3d at 301 (internal citation omitted).

Here, Virginia's long-arm statute provides for specific personal jurisdiction over Doe. The statute allows for personal jurisdiction over a defendant who has caused "tortious injury by an act or omission" in Virginia. Va. Code Ann. § 8.01-328.1(A)(3) (2019). Here, Plaintiff alleges that Doe "directed the acts complained of towards [this judicial] district and utilized instrumentalities

3

which reached into the district." (Compl. ¶ 10.) Specifically, Plaintiff alleges that Doe gained access to Plaintiff's email accounts, domain-management accounts, and associated computer records to cause the relevant "domain name registration records maintained by Verisign, Inc. . . . to be altered so as to transfer control of the Defendant Domain Name away from the Plaintiff." (*Id.*) Verisign, Inc., which is the domain-name registry for Defendant Domain Name, is in this judicial district. (Compl. ¶ 9.) Therefore, because Doe caused a tortious injury by an act in Virginia, the Court may properly exercise specific personal jurisdiction over him.

The Court also has *in rem* jurisdiction over Defendant Domain Name. For a court to have *in rem* jurisdiction over property, it must have a sufficient basis to exercise jurisdiction under the Due Process Clause. *Shaffer v. Heitner*, 433 U.S. 186, 207 (1977); *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 224 (4th Cir. 2002) (applying the "minimum contacts test" to a district court's exercise of *in rem* jurisdiction over internet domain names). Therefore, for this Court to exercise *in rem* jurisdiction over Defendant Domain Name here, it must "have sufficient contacts with the Commonwealth of Virginia to justify the exercise of *in rem* jurisdiction." *Harrods*, 302 F.3d at 224. In *Harrods*, the Fourth Circuit held that this Court had *in rem* jurisdiction over internet domain names because they were registered in Virginia. *See id.* ("[W]e conclude that courts in Virginia, the state where the Domain Names are registered, may constitutionally exercise *in rem* jurisdiction over them. Thus, the district court's exercise of *in rem* jurisdiction over the Domain Names was constitutional.").

Here, Verisign, Inc. is the registry operator for all ".com" domain names, and it is located in Reston, Virginia. (*See* Compl. ¶ 9.) Because Defendant Domain Name is a ".com" domain name and is registered within this judicial district, the undersigned finds that Defendant Domain Name has sufficient contacts with Virginia for this Court to exercise *in rem* jurisdiction over it.

***Third***, Plaintiff filed this lawsuit in the proper venue pursuant to 28 U.S.C. § 1391(b). A plaintiff may file a civil action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b). Here, venue is appropriate for similar reasons as to why this Court may exercise *in personam* and *in rem* jurisdiction over Defendants. Plaintiff alleges that Doe "caused the domain name registration records maintained by Verisign, Inc. . . . to be altered so as to transfer control of the Defendant Domain Name away from the Plaintiff." (Compl. ¶ III(24).) As Verisign, Inc. is located in this judicial district, the undersigned finds that a substantial part of the events giving rise to this lawsuit occurred in the Eastern District of Virginia, and venue is proper here.(Compl. ¶ 9.)

### C. Service of Process

Federal Rule of Civil Procedure 4(f) governs serving an individual in a foreign country. *See* Fed. R. Civ. P. 4(f). Of relevance here, the Rule allows a plaintiff to serve an individual in a foreign country by "means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).[2]

As mentioned above, Plaintiff filed a "Motion for Leave to Serve by Email and Publication." (Dkt. 2.) In support of the motion, Plaintiff explained that "Defendant Doe has concealed his identity behind a privacy service or by simply failing to provide any name on the registrations. The actual location of the Defendant Doe is unknown[] and is not subject to *in personam* jurisdiction anywhere in the United States." (Dkt. 3 at 2.) Plaintiff requested that the

---

[2] The Rules explicitly contemplates methods of service that have been internationally agreed upon, such as the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. However, as Plaintiff is unaware of Doe's actual location, this inquiry is unavailable to the Court.

Court grant leave to serve by publication and to concurrently serve process by email and publication for the Plaintiff's alternative Computer Fraud and Abuse claim . . . as well as the other claims asserted." (*Id.* at 4.) Plaintiff further argued that service by publication and email is in the public interest, comports with due process, and is reasonable under the circumstances to apprise Defendant of the action. (*Id.* at 4-5.) Plaintiff further argued that because there was no way to determine Doe's location, service by email and publication constituted the only method to effect actual service of process. (*Id.*)

The Court granted Plaintiff's motion on January 6, 2022, finding that service by email and a single publication was reasonably calculated to give Doe notice of this matter, especially because Doe's location was and remains unknown. (*See* Dkt. 5.) Specifically, the Court ordered Plaintiff to (1) publish a copy of the order in *The Washington Times* once within fourteen (14) days after entry of the order, and (2) serve Doe via email. (*Id.*) The order further advised Doe of the nature of the matter, how to respond, the time in which to respond, and the potential consequences of not responding to the lawsuit. (*See id.*)

Plaintiff complied with the Court's order. First, Plaintiff filed a Request for Entry of Default with an accompanying Declaration of Johnathan Westreich, Esq. (Dkt. 6.) The Request demonstrated that Plaintiff published the Court's order in *The Washington Times* on January 10, 2022. (*See* dkts. 6-1, 6-2.) Plaintiff has demonstrated that it complied with the Court's order. The undersigned finds that Plaintiff effected proper service of process pursuant to Federal Rule of Civil Procedure 4(f) and the Court's Order.

II. FINDINGS OF FACT

Upon a full review of the pleadings and record in this case, the undersigned finds that Plaintiff has established the following facts. Plaintiff is a citizen if China and resides at 412 Aing Yang District, Cheng Du Sichuan 610000, China. (Compl. ¶ 4.) Defendant John Doe is an unknown individual with possession of the Defendant Domain Name, <330.com>. (Compl. ¶ 4.) Defendant Domain Name is a <.com> domain name registered with Verisign, Inc., which is located at 21355 Ridgetop Circle, Lakeside III Dulles, Virginia 20166. (Compl. ¶ 6.)

Plaintiff registered Defendant Domain Name on November 6, 2018 with a renewal period extending to February 6, 2027. (Compl. ¶ 16; Decl. Huang ¶ 2.) Plaintiff "obtained Defendant Domain Name as part of his business involving the purchase and sale of domain names for profit making the domain name a fungible good of value which he uses in commerce." (Compl. ¶ 17; Decl. Huang ¶ 3.) Defendant Domain Name is valuable to Plaintiff and is worth around five hundred thousand dollars ($500,000.00). (Compl. ¶ 18; Decl. Huang ¶ 4.) Plaintiff, as registrar, controlled Defendant Domain Name through the address huangdong1910js@gmail.com. (Compl. ¶ 19; Decl. Huang ¶ 5.) The registrar account is maintained on a protected computer system, and account access is password protected. (Compl. ¶ 20; Decl. Huang ¶ 6.)

Defendant John Doe accessed Plaintiff's registrar account without authorization on or about November 12, 2021. (Compl. ¶ 21; Decl. Huang ¶ 7.) Using this unauthorized access, Defendant Doe changed Defendant Domain Name's registration record, seizing title and control of <330.com>. (Compl. ¶ 25.) Defendant Doe intends to sell Defendant Domain Name for profit. (Compl. ¶ 26.) Defendant Doe may also harm Plaintiff by posting improper or illegal information on the webpage associated with Defendant Domain Name. (Compl. ¶¶ 35, 38.)

III. E̲v̲a̲l̲u̲a̲t̲i̲o̲n̲ ̲o̲f̲ ̲P̲l̲a̲i̲n̲t̲i̲f̲f̲'̲s̲ ̲C̲o̲m̲p̲l̲a̲i̲n̲t̲

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

Here, as discussed more below, Plaintiff seeks the relief prayed for in the Complaint under the Anti-Cybersquatting Protection Act (Count I), Computer Fraud and Abuse Act (Count II), Declaratory Judgment Act (Count III), Electronic Communication Privacy Act (Count IV), Tortious Interference with Contract (Count V), Conversion (Count VI), and Quiet Title (Count VII) against Defendant Domain Name. The undersigned's first Report and Recommendation addressed Count I and recommended denial.[3] While the Complaint alleges six other claims, Plaintiff's requested relief is the same for each Count. The undersigned therefore evaluates only Count II of the Complaint.

---

[3] The Report and Recommendation remains pending, but Defendants did not file any objections before the March 24, 2022 deadline. (*See* dkt. 12.)

### A.  Legal Standard

The CFAA targets and deters "hacking" or the unauthorized access of electronic data through primarily criminal penalties. However, plaintiffs may also bring a private right of action and seek civil penalties including "compensatory damages and injunctive or other equitable relief." 18 U.S.C. § 1030(g). The statute prohibits, among other things:

- intentionally accessing a protected computer without authorization and thereby obtaining information (18 U.S.C. § 1030(a)(2)(C));
- accessing any protected computer without authorization, "knowingly and with intent to defraud," and obtaining anything of value from the fraudulent conduct (unless the thing obtained "consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period") (18 U.S.C. § 1030(a)(4)); and
- intentionally accessing a protected computer without authorization and thereby causing "damage and loss" (18 U.S.C. § 1030(a)(5)(C)).

"'[A]ccess' means "[t]o obtain, acquire,' or '[t]o gain admission to.'" *WEC Carolina Energy Solus. LLC*, 687 F.3d 199, 204 (4th Cir. 2012) (quoting *Oxford English Dictionary* (2d ed. 1989, online version 2012)). A "computer" is a high-speed processing device 'and includes any data storage facility or communications facility 'and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *Id.* Computers qualify as "protected computer[s]" when "used in or affecting foreign commerce or communication, including a computer located outside of the United States that is used in a manner that affects interstate or foreign commerce or communication in the United States." 1030(e)(2)(B). And the Fourth Circuit defines authorization as "formal warrant, or sanction." *Id.* (quoting *Oxford English Dictionary* (3d ed. 2011, online version 2012)).

### B.  Analysis

Here, Plaintiff sufficiently alleges that Defendant Doe violated the CFAA. (*See* Compl. ¶¶ 39-43.) On or before November 12, 2021, Defendant Doe took control of the <330.com> domain name and retitled it as if owned by Defendant Doe. (*See* Comp. ¶¶ 24-25.) Plaintiff alleges that his

computer was a "protected computer" involved in a transaction "involving an interstate or foreign communication." (Compl. ¶ 40.) Plaintiff also alleges that Doe violated the three CFAA provisions outlined above. (*See* Compl. ¶¶ 40-41.)

***First***, Doe allegedly "knowingly and intentionally" accessed Plaintiff's computer and email accounts, and thereby "obtained information" from Plaintiff's computer. (Compl. ¶¶ 40-41.) As discussed above, the undersigned found that Doe hacked Plaintiff's computer and email accounts to change the registration information for Defendant Domain Name so that he could control it. To do so, Doe must have "obtained information" from Plaintiff's computer.

***Second***, Plaintiff alleges that Doe "knowingly and intentionally, and with intent to defraud, accessed the Plaintiff's registrar account on a protected computer without authorization and thereby obtained information from the protected computer in a transaction involving an interstate or foreign communication." (Compl. ¶ 40.) Plaintiff further alleges that Doe's conduct cost him "at least $5,000." (Compl. ¶ 42.) Again, as discussed above, the undersigned found that Defendant Domain Name is worth approximately five-hundred thousand dollars ($500,000.00). Doe therefore knowingly obtained "something of value" by fraudulently transferring control of Defendant Domain Name and hacking Plaintiff's computer.

***Lastly***, Plaintiff alleges that Doe "intentionally accessed the Plaintiff's registrar account on a protected computer without authorization and as a result of such conduct caused damage and loss." (Compl. ¶ 41.) Here, Doe's conduct undoubtedly caused financial damage and loss to Plaintiff. Plaintiff's business entails buying internet domain names and reselling them for a profit; therefore, Doe stole the means of Plaintiff's business and inflicted financial loss. The Court accordingly finds that Plaintiff sufficiently alleges a claim under the CFAA.

IV. REQUESTED RELIEF

Plaintiff requests injunctive and other equitable relief in his Amended Complaint. (Compl. ¶ I-XV) At this juncture, Plaintiff requests that the Court enter default judgment against Doe and Defendant Domain Name, and transfer control of Defendant Domain Name back to Plaintiff. (Mot. at 3.) Domain name transfer is an equitable remedy. To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

(1) that it has suffered an irreparable injury;
(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
(4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Here, Plaintiff meets these requirements.

***First***, Plaintiff has demonstrated that he suffered an irreparable injury, and will continue to suffer the injury absent injunctive relief. Plaintiff's business consists of purchasing and reselling internet domain names. Because Doe wrongfully transferred control of Defendant Domain Name by changing the registration record, Plaintiff lost property that he purchased and rightfully belonged to him. Plaintiff therefore suffered an irreparable injury by losing that property.

***Second***, the undersigned finds that legal remedies are insufficient here. Because Doe's location and exact identity are unknown, and he has failed to appear or respond to this lawsuit, it would likely be impossible for Plaintiff to recoup his financial losses from Doe. Accordingly, because the Court can order relevant entities to transfer control of Defendant Domain Name back to Plaintiff, the undersigned finds that injunctive relief is appropriate.

***Third***, the balance of the hardships weighs strongly in favor of Plaintiff. Doe would not

suffer a cognizable hardship because he took property that did not belong to him in the first place.

*Finally*, the undersigned finds that the public interest supports granting injunctive relief because it will protect Plaintiff's rightful ownership of property and potentially deter future computer hacking and illegal domain-name transfers.

## V. RECOMMENDATION

For the reasons stated above, the undersigned recommends that this Court (1) grant Plaintiff's second motion for default judgment, (2) order the Registry of Record of Verisign or some other Registry to promptly change the registrar for the domain name <330.com> as directed by Plaintiff's counsel, (3) order that the registrar of <330.com> shall place the referenced domain name in the account as directed by Plaintiff's Counsel, and (4) dismiss the remaining Counts (III)-(VII) of the Complaint without prejudice. (Mot. at 3.)

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

May 17, 2022
Alexandria, Virginia